IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07cr70-WHA |
| | ) | |
| DEMETRIA MURPHY | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the Court on the *Motion to Suppress Evidence and Statements*
filed by Defendant Demetria Murphy ("Murphy").  *See* Doc. 31, filed June 5, 2007.  The
Court held a hearing on the motion on June 13, 2007. For the reasons discussed below, the
Magistrate Judge recommends that the District Court deny the motion to suppress.

### I. FACTUAL BACKGROUND AND MOTION TO SUPPRESS

On December 21, 2005, Murphy was driving a 2000 Ford Explorer SUV southbound
on Interstate 65 near mile marker 165 in Hope Hull, Alabama when mechanical problems
forced her to pull off the roadway.  Soon thereafter, Trooper Shawn Loughridge saw the car
while he was on routine patrol.  Trooper Loughridge pulled over to assist what he thought
were  motorists in distress.   The occupants of the car told Trooper Loughridge they ran out
of gas, and they just recently put gasoline in the SUV but it still would not start.  Trooper
Loughridge suggested the fuel shut off switch in the rear cargo area might account for the
mechanical problem.  Murphy chose to open the rear cargo door of the Explorer to check the
fuel shut off switch.  When Murphy opened the rear cargo door, Trooper Loughridge saw,

in plain view, the butts of two shotguns.  Trooper Loughridge, for his own safety, pulled the weapons from underneath other items strewn across the cargo area and saw one of the shotguns had a short barrel.  Further, military ballistic body armor was underneath both shotguns.  Trooper Loughridge immediately arrested the defendants.  In light of the short barreled rifle, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sent two agents to investigate.  ATF Agents Timothy Fitzpatrick and Dwight Brown discovered Murphy is a felon whose rights to possess a firearm were taken and the unregistered shotgun was indeed shorter than the law permits without registration.  ATF Agents Fitzpatrick and Brown gave Murphy her Miranda warnings.  Murphy acknowledged verbally and in writing she understood her rights against self incrimination.  Thereafter, Murphy made several incriminating statements in response to police questions about the firearms.

On April 4, 2007, the Grand Jury for the Middle District of Alabama returned a two count indictment against defendant, Demetria Murphy ("Murphy").  *See* Doc. 1.  Count 1 alleges Murphy is a felon who thereafter possessed two firearms in violation of federal law. Count 2 alleges one of the firearms possessed by Murphy was a short barreled shotgun or, in the vernacular, a sawed off shotgun not registered under federal law.  Murphy argues the discovery of the firearms and her incriminating statements thereafter to law enforcement violate her rights under the Fourth and Fifth Amendments sufficiently to bar the admission of the firearms and her statement.

## II. ISSUES PRESENTED

The admissibility of the firearms and the statements against Murphy hinges upon the

answers to two questions: (1) Did the discovery of the firearms violate the Fourth Amendment? (2) Do the statements made by Murphy after Trooper Loughridge saw the firearms contravene the Fifth Amendment?  The facts and law clearly demonstrates the answer to each question is, no.

### III. DISCUSSION AND ANALYSIS

**A.     FOURTH AMENDMENT CLAIMS**

Murphy argues the firearms were found after Trooper Loughridge conducted an impermissible search under the Fourth Amendment, without probable cause, and without a warrant.  Further Murphy argues, when Loughridge refused to leave when requested, the situation turned into a traffic stop.  *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The Court finds the actions of Trooper Loughridge do not constitute a search which implicates the Fourth Amendment.  Trooper Loughridge merely assisted a motorist, Defendant Murphy, to find the cause of her mechanical problems.  In the normal course of assistance to a stranded motorist, the contraband became visible to Trooper Loughridge. Contraband in plain view falls outside the protection of the Fourth Amendment."Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993) (citations omitted).  "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a

police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment--or at least no search independent of the initial intrusion that gave the officers their vantage point." *Id.* The plain view exception to the Fourth Amendment applies so long as officers do not violate the Fourth Amendment to arrive at their vantage point to see the evidence. *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *see also United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) (citing *Horton*). Trooper Loughridge did no more than act as a good Samaritan along the public roadway and happened to see two shotguns in plain view. Defendant Murphy voluntarily exposed the firearms to Trooper Loughridge when she opened the cargo door of the Ford Explorer. *See, e.g. United States v. Santiago*, 410 F.3d 193, 201 (5th Cir. 2005) (Defendant gave deputies consent to enter home and firearm was seen in plain view...though the court did not get the sense from the record that deputies entered the home operating under the belief they would discovery a cache of weapons, the court has not asked law enforcement to ignore the significance of items observed in plain view); *see also Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ( "The general public could peer into the interior of [defendant's] automobile from any number of angles; there is no reason [the officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (citations omitted).

Further, none of the passengers had a valid pistol permit.  It is a violation of Alabama law to transport a firearm in a car without license therefore Trooper Loughridge had the authority to seize the firearms without more as evidence of a crime.  *See* Ala. Code § 13A-11-73.  The Fourth Amendment provides"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches an seizures, shall not be violated."  None of the concerns behind the Fourth Amendment are present in the facts. Trooper Loughridge took reasonable steps to assist motorists in distress.  But for Defendant Murphy voluntarily opening a door which set contraband in plain view, the evidence would not have been found by Trooper Loughridge.  As such, the Court concludes no "search" took place and therefore, there is no violation of the Fourth Amendment.

**B.     CONSENT**

Fourth Amendment protections fall away to the extent a person voluntarily consents to a search.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593-94, 66 S.Ct. 1256, 1261-62, 90 L.Ed. 1453 (1946) and *Zap v. United States*, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477 (1946)).  In her suppression motion, Murphy alleges she gave Trooper Loughridge consent to search for the fuel shut off switch but he exceeded the scope of the search. The admission that Trooper Loughridge had consent to look in the cargo area coincides with my finding, as a matter of fact, that Murphy voluntarily exposed the contraband to the plain view of Trooper Loughridge when she opened the rear cargo door of the SUV so he could find the cause of her mechanical troubles.  Taking Murphy's version

of facts as true, Trooper Loughridge was indeed well within the scope of the consent given by Murphy to examine the cargo compartment in an effort to locate the fuel shut off switch. No facts which the court finds persuasive indicate Trooper Loughridge looked in any place where it would be illogical or unlikely to find a fuel shut off switch. The court further finds the contraband was in plain view after Murphy voluntarily gave consent for Trooper Loughridge to look in the SUV to for the fuel shut off switch.

## C.    FIFTH AMENDMENT CLAIMS

Murphy alleges various incriminating statements she made after Trooper Loughridge found the firearms were taken in contravention of the Fifth Amendment. Defendant Murphy acknowledges the alleged Fifth Amendment violations are completely dependent upon her Fourth Amendment claims as she asserts her statements are the fruit of the illegal search and seizure. Murphy argues any evidence obtained as a result of the illegal search and seizure was "fruit of the poisonous tree," and therefore should be suppressed. *See, e.g. United States v. Chanthasouxat*, 342 F.3d 1271, 1280 (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)) (stating the general rule that evidence gathered as a result of an unconstitutional stop must be suppressed). The Court finds the items were in plain view, thus, no search took place. Even if there was a search, Murphy consented to such search when she opened the rear cargo door of the Ford Explorer to let Trooper Loughridge find the fuel shut off valve. As a result, the "fruit of the poisonous tree" concept does not apply and all statements by Murphy should therefore be fully admissible at trial.

Furthermore, no other Fifth Amendment rights have been implicated. The Fifth Amendment provides that "[n]o person... shall be compelled in any criminal case to be a witness against himself." Custodial police interrogations trigger Fifth Amendment concerns. *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984). Trooper Loughridge took Murphy into custody immediately after Trooper Loughridge saw the firearms. Post-arrest, Trooper Loughridge had duty to tell Murphy about her rights against self incrimination and to the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 467-68, 86 S.Ct. 1602, 1624-25, 16 L.Ed.2d 694 (1966). Trooper Loughridge gave Murphy her Miranda warnings and obtained an oral waiver of Miranda rights. *See id*. Fifth Amendment rights are personal rights which may be set aside if a person waives their rights. No threats, force, inducements or any other impermissible acts made Murphy waive her Fifth Amendment claims. The statements, from a constitutional perspective, should therefore be fully admissible at trial.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the *Motion to Suppress Evidence and Statements* (Doc. 31) filed by Defendant Murphy be **DENIED**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **June 28, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 15th day of June, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE